STERLING L. ANDERL, EXECUTOR OF THE ESTATE OF FRANK R. WILLSEY, DECEASED, APPELLEE, v. ETHEL F. WILLSEY AND PAULINE VARLEY, CONSERVATOR OF THE ESTATE OF ETHEL F. WILLSEY, APPELLANTS.

229 N. W. 2d 46

Filed May 8, 1975. No. 39722.

Clark O'Hanlon and John R. O'Hanlon of O'Hanlon & Martin, for appellants.

Roy I. Anderson, for appellee.

Heard before SPENCER, BOSLAUGH, and BRODKEY, JJ., and HASTINGS and CLARK, District Judges.

CLARK, District Judge.

This is an action based on an antenuptial agreement. The proceeds of two insurance policies on the life of Frank R. Willsey in the sum total of $5,900 were paid by the insurer to defendant, Ethel F. Willsey, the surviving widow of Frank. Plaintiff, as executor of Frank's estate, seeks, by virtue of the antenuptial agreement, to require defendants to pay the proceeds to Frank's estate.

The trial court found for the plaintiff and entered judgment against defendants in the amount of $5,900 plus interest and costs.

We affirm the judgment of the District Court.

On October 4, 1971, Frank R. Willsey and Ethel F. Stewart entered into an antenuptial agreement which provided in part:

"1. That all properties of any kind or nature, real, personal or mixed, wherever the same may be found, which belong to each party, shall be and forever remain the estate of said party, including all interest, rents and profits which may accrue therefrom.

"2. That each party shall have at all times the full right and authority, in all respects the same as each would have if not married, to use, enjoy, manage, convey and encumber such property as may belong to him or her.

"3. That each party may make such disposition of his or her property as the case may be, by gift or will during his or her lifetime, as each sees fit; and in the event of the decease of one of the parties, the survivor shall have no interest in the property of the estate of the other, either by way of inheritance, succession, family allowance or homestead."

On October 12, 1971, Frank and Ethel, both about 82 years of age, were married. Frank had been previously married, and his spouse had predeceased him. Ethel had not been previously married. Frank died on August 11, 1972, leaving Ethel as his surviving widow. The two

policies involved here were group life insurance policies issued by the Equitable Life Assurance Society. Each policy named as the designated beneficiary Clara S. Willsey - wife. Clara died in 1966. Each of the policies provided that if there was no designated beneficiary surviving at the time of the insured's death, payment would be made to the first class of successive preference beneficiaries surviving. The first class of successive preference beneficiaries named in the policies was the widow of the insured.

Plaintiff was the nephew of Clara S. Willsey and was a specific and residual legatee under Frank's will as well as executor thereof. Frank's estate consisted of approximately $6,000 in personalty exclusive of any interest in the insurance proceeds. Ethel, at the time of her marriage to Frank, had personal property of the value of approximately $59,000.

Extensive testimony was introduced in the trial court showing that plaintiff and his wife were close to Frank and Clara socially and that especially after Clara's death they helped Frank on many occasions and that Frank confided in them.

Testimony was allowed, over the objection of defendants, on grounds of the dead man's statute, relating to conversations plaintiff and his wife had with Frank prior to the signing of the antenuptial agreement and prior to Frank's marriage to Ethel. The gist of this testimony, so far as it is pertinent here, was to the effect that the impending marriage was to be a "companionship marriage" and that Frank and Ethel were each to retain his own property. Further, Frank was quoted as saying, "There is something involved. I have got some insurance, about $6,000.00 worth of insurance," and that he considered the insurance as his property.

Further, plaintiff introduced testimony regarding a conversation between plaintiff and Ethel after Frank's death, in either September or October 1972. This testimony was to the effect that in response to a question as

to whether Ethel had ever received Frank's insurance, she stated that she was not sure if she had received it or not and, further, that she didn't want any of Frank's insurance or anything of his.

Other evidence was introduced by plaintiff to indicate that after their marriage Frank and Ethel lived in the apartment that Ethel had previously occupied and that they shared their living expenses more or less on an equal basis.

Defendants introduced testimony that beginning in October 1971, Ethel was getting very forgetful, and that she later became incompetent and was unable to testify at the trial. The conservator for Ethel was appointed April 1, 1973.

Evidence was further introduced by defendants that during the course of the marriage Ethel had named Frank as beneficiary in an insurance policy on her life. She also had had reissued a certificate of deposit in the amount of $2,000 which had previously been in her name only. As reissued, the certificate was payable to Frank and Ethel.

Defendants' assignments of error are in essence that the court erred in (1) allowing testimony of plaintiff in violation of the dead man's statute and the parol evidence rule, (2) in failing to interpret the insurance policies from within the four corners of the policies, (3) in failing to find that the insurer correctly paid the policy proceeds to Ethel, and (4) in finding that the antenuptial agreement created a binding promise on Ethel to let Frank's estate be the beneficiary under the policies.

Being an action in equity we try the case de novo on the record.

Defendants argue that the testimony of plaintiff and his wife relating to conversations with Frank should have been excluded by the trial court as prohibited under the dead man's statute.

The statute, so far as is pertinent here, provides:

"No person having a direct legal interest in the result of any civil action or proceeding . . . *when the adverse party is the representative of a deceased person,* shall be permitted to testify to any transaction or conversation had between the deceased person and the witness. . . . " § 25-1202, R. S. Supp., 1974. (Emphasis added.)

This court has previously held that a person claiming as beneficiary of a life insurance policy is not the representative of a deceased person within the meaning of the dead man's statute.

This court has stated: "At the very outset it is apparent that the statute is not applicable to the situation presented here. It is true the plaintiffs have a direct legal interest in the controversy, but the defendant is not the representative of a deceased person within the meaning of the statute. Whatever interest the defendant may have in the subject of this litigation is not based upon her representation of a deceased person. Her rights are based on a written obligation which matured at his death, an obligation which the deceased never had in his lifetime, and never could have been enforced by him. It came into existence upon his death, as an original obligation." Smith v. Pacific Mut. Life Ins. Co., 130 Neb. 501, 265 N. W. 534. See, also, Williams v. Volz, 131 Neb. 392, 268 N. W. 300.

In this case, Ethel was not the representative of Frank, and the testimony regarding conversations with Frank were properly admitted insofar as the dead man's statute is concerned. Defendants' contention in this regard is without merit.

Defendants also assign as error and argue in this court that the testimony regarding the conversations with Frank should be inadmissible as a violation of the parol evidence rule. It is noted, however, that this objection was not raised either in the trial or in defendants' motion for a new trial. This court has repeatedly held that where testimony is offered and admitted in evidence without proper objection such objection will

not be heard on appeal. See, Pauley Lumber Co. v. City of Nebraska City, 190 Neb. 94, 206 N. W. 2d 326; Parker v. Christensen, 192 Neb. 117, 219 N. W. 2d 235; George Rose Sodding & Grading Co., Inc. v. City of Omaha, 190 Neb. 12, 205 N. W. 2d 655.

The trial court not having been given the opportunity to rule on this objection, we will not consider it here.

We turn now to the intent of the parties in entering into the antenuptial contract. The record reflects that both parties were advanced in age and sought only a "companionship" marriage. Both prior to the marriage and after it, both Frank and Ethel indicated that it was their intentions that each should retain his own assets in their entirety. Frank paid one-half of the rent on their apartment and one-half of other living expenses. Frank indicated he considered the insurance policies as part of his assets and that this was part of his reason for having the agreement. Ethel stated she did not want Frank's insurance proceeds nor "anything else of his," thus indicating that her intent coincided with that of Frank in this regard. It is apparent that Frank believed this agreement obviated the necessity for a change of beneficiary.

Generally, the determination of the intention of the parties to an antenuptial contract is to be made by considering the conditions and circumstances surrounding the parties at the time the agreement was made. Since such an agreement is favored by public policy, it is to be construed liberally to effect the intention of the parties, irrespective of the ordinary legal construction of words used therein and of externals and the form used therein. See 41 Am. Jur. 2d, Husband and Wife, § 288, p. 237.

"Liberal construction will be given to marriage settlements in order to carry out the intention of the parties. The court will not be bound by technical rules and where necessary to carry out the presumed intent of the parties will use greater liberality of construction

than in the case of wills or deeds." 41 C. J. S., Husband and Wife, § 102, p. 575.

"Antenuptial contracts should be construed according to the intentions of the parties and the conditions and circumstances attending their execution." Caprette v. Spieth, 181 Neb. 11, 146 N. W. 2d 746.

". . . a liberal construction of the instrument (antenuptial agreement) will be indulged in order to carry out the intention of the parties." Rieger v. Schaible, 81 Neb. 33, 115 N. W. 560.

We find that it was the intent of both Frank and Ethel that Frank's insurance policies were to remain his property and that Ethel would not share in the proceeds thereof.

This is not an action against the insurer, but one in equity to enforce an agreement between the parties thereto. During the marriage Ethel had the benefit of the contract as both she and Frank understood it to be. Frank's total assets, including the insurance proceeds were only $12,000, whereas Ethel's assets were $59,000. She, having reaped the benefit of the contract, should not now be heard to complain about enforcement of the contract according to their intentions. See, Strickland v. Omaha Nat. Bank, 181 Neb. 478, 149 N. W. 2d 344; Rieger v. Schaible, *supra*.

The judgment of the District Court is affirmed.

AFFIRMED.