The **ESTATE OF Sylvia S. SWANSON, Plaintiff,**

v.

The **UNITED STATES, Defendant.**

No. 97–793T.

United States Court of Federal Claims.

March 13, 2000.

---

Kent L. Schwartz, Morristown, NJ, for Plaintiff.

Charles J. Crueger, with whom were Assistant Attorney General Loretta C. Argrett, David Gustafson, and Mildred L. Seidman, Washington, DC, for Defendant.

## OPINION

BRUGGINK, Judge.

This is an action for refund of federal estate tax allegedly overpaid by plaintiff. The case is currently before the court on cross-motions for summary judgment. The matter is fully briefed. Argument was heard on March 7, 2000. For reasons explained below, defendant's motion is granted.

## FACTS

Sylvia Swanson and her husband, Lemar, executed their wills in 1982 in Newport Beach, California. At the same time, they executed a document entitled "Document of Trust of the Swanson Family Trust" (Trust Agreement), which named them as co-trustees of the Swanson Family Trust. Dean Stubblefield, Mrs. Swanson's nephew by marriage, was named as the successor executor to the Swansons' wills and successor trustee to the Swanson Family Trust.

When Lemar Swanson died in 1984, Sylvia Swanson became the sole trustee of the Swanson Family Trust, which was divided into three smaller trusts: the Survivor's Trust, the Marital Trust and the Exemption Trust. Only the Survivor's Trust is at issue in this case.

In 1985 Mrs. Swanson was declared legally blind. Thereafter, Dean Stubblefield took

over practically all of the responsibility for the management of Mrs. Swanson's financial assets and real property. In 1989, Mrs. Swanson moved into a residential and nursing care center.

On October 10, 1990, Mrs. Swanson suffered from a loss of consciousness and was hospitalized. The physician who saw her, Dr. Galef, noted that the staff at her nursing care facility had noticed that in the previous week Mrs. Swanson, aged 83 at the time of her admission, was increasingly weaker and unable to move about without assistance. Dr. Galef described her as "weak" and "somewhat confused."

After 20 days in the hospital, Mrs. Swanson entered a nursing home. On December 14, Mrs Swanson executed a Bank of America durable power of attorney authorizing Dean Stubblefield to transact business on Bank of America checking account no. 10454–09709, owned by the Survivor's Trust; this power of attorney, by its terms, expired three days later on December 17.

Another power of attorney document, entitled "Durable General Power of Attorney," was executed on December 14.[1] It purports to give Mr. Stubblefield the legal authority to manage and dispose of Mrs. Swanson's property, and to conduct business on her behalf. It is broad in the authority and discretion it purports to invest in Mr. Stubblefield. It also gave Mr. Stubblefield the "sole discretion" as to when he should invoke the powers conferred by the power of attorney. The document is notarized, and was also signed, as "witnesses," by Orpha Froblom, a friend of Mrs. Swanson, and Emilie Molina, Mrs. Swanson's nurse.

In the first week of February, 1991, Mr. Stubblefield wrote, signed and delivered 38 checks, made out to 38 separate individuals,

1. The parties dispute both the validity and legal effect, if any, of this document. In evaluating defendant's motion the court assumes that the General Durable Power of Attorney dated December 14, 1990, was validly executed.

2. All "§" or "section" references, unless otherwise noted, are to the Internal Revenue Code ("IRC" or "Code") at title 26 of the United States Code (1994).

in the amount of $10,000 each. Mr. Stubblefield, in his deposition, stated that the idea for the $10,000 checks arose in a discussion with Mrs. Swanson about "minimizing the tax impact on her estate." According to Mr. Stubblefield, he came up with a list of 40 potential recipients for the gifts and Mrs. Swanson approved 38 of them, by nodding her head when he read her each individual's name. Mrs. Swanson died on February 13, 1991.

On November 16, 1991, Mrs. Swanson's estate made a payment of federal estate tax in the amount of $310,200.00. On February 7, 1992, Mr. Stubblefield, as executor, filed the federal estate tax return on behalf of Mrs. Swanson's estate, and made an additional payment of $26,464.00.

On August 4, 1994, plaintiff filed a Claim for Refund and Request for Abatement in the amount of $161,479.00. Plaintiff claimed a refund of $15,440.00 with respect to the valuation of a partnership included in the estate and a refund of $146,039.00 with respect to the 38 checks which, plaintiff maintained, were *inter vivos* gifts and, thus, not properly includible in Mrs. Swanson's estate by virtue of sections 2035 and 2038 of the Internal Revenue Code.[2] On November 22, 1995, the Internal Revenue Service allowed the claim with respect to the partnership but denied it with respect to the plaintiff's claim of gifts. Plaintiff filed this action on November 18, 1997, seeking a refund of the portion of the estate tax attributable to having the value of the 38 checks included in Mrs. Swanson's gross estate.

## DISCUSSION

Defendant offers three reasons why plaintiff's refund claim, in whole or in part, should be denied.[3] We find one dispositive.

3. Defendant argues the following in support of its position that the value of the gifts is properly includible in the value of Mrs. Swanson's gross estate: First, that the gifts were made beyond the scope of the authority conferred upon Mr. Stubblefield by the power of attorney, and are thus void. Second, that the gifts were made in violation of the Trust Agreement, and are thus void. The validity of either of these arguments operates as a total bar to plaintiff's claim. Finally, in the event the court rejects both of the above theories,

A decedent's gross estate, for purposes of computing federal estate taxes, includes any and all interests in property the decedent has at the time of death. *See* IRC § 2033. While outright gifts, where the donor retains no interest in the property or any ability to alter or revoke the gift, are not part of the gross estate, section 2038 operates to pull some transfers back into the gross estate. That section provides, in pertinent part, that the value of the gross estate includes all property:

> to the extent of any interest therein of which the decedent has at any time made a transfer ... by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke.

IRC § 2038(a)(1).

Defendant argues that all 38 gifts made by Stubblefield were beyond the power granted him under the durable power of attorney and are thus void under California law. Mrs. Swanson therefore retained a power of revocation over the gifts and they are includible in her gross estate pursuant to section 2038(a)(1). We agree with the defendant and, finding this argument dispositive, limit our discussion accordingly.

■ The legal effect of gifts made pursuant to a power of attorney is determined according to state law. *See Morgan v. Commissioner*, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); *Mapes v. United States*, 15 F.3d 138 (9th Cir.1994). In this case, it is undisputed that California law controls. This court must decide state law issues as it concludes the California Supreme Court would. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

We start with the definition that a "power of attorney is '... a written authorization to an agent to perform specified acts in behalf

of his principal.'" *Rosenberg v. C.W. Clarke Co.*, 200 Cal.App.2d 178, 186, 19 Cal.Rptr. 191 (Cal.App.1962) (*quoting* 2 Cal.Jur.2d, Agency § 30). While a power of attorney is merely a formalized agency agreement, it must be in writing in order to be valid and effective. *See* Cal.Civ.Code § 2476 (1991 Pocket Part) (requiring acknowledged signature of principal in order for power of attorney to be valid).

■ A general power of attorney does not give an attorney-in-fact the authority to make gifts of the principal's property. *Huston v. Greene*, 51 Cal.App.4th 1721, 1726, 60 Cal.Rptr.2d 217 (Cal.Ct.App.1997). *See Randall v. Duff*, 79 Cal. 115, 19 P. 532 (1888), adhered to on rehearing, 79 Cal. 115, 21 P. 610 (1889); *Bertelsen v. Bertelson*, 49 Cal. App.2d 479, 122 P.2d 130 (1942). The rule was neatly summed up in *Shields v. Shields*, 200 Cal.App.2d 99, 19 Cal.Rptr. 129 (Cal. 1962), where the court stated:

> A power of attorney conferring authority to sell, exchange, transfer or convey real property for the benefit of the principal does not authorize a conveyance as a gift or without a substantial consideration [internal citations omitted]; and a conveyance without the scope of the power conferred is void. [citations omitted].

*Id.* at 101, 19 Cal.Rptr. 129. In 1994, the rule was codified in section 4264 of the California Probate Code, which provides, in pertinent part, that:

> A power of attorney may not be construed to grant authority to an attorney-in-fact to perform any of the following acts unless expressly authorized in the power of attorney:
>
> . . .
>
> (c) Make or revoke a gift of the principal's property in trust or otherwise.

Cal. Probate Code § 4264 (West 2000 Electronic Pocket Part Update).[4] This is a natural extension of the rule of construction that

---

defendant argues that 13 of the 38 checks remained part of Mrs. Swanson's gross estate because they were uncashed at the time of her death.

4. The estate was probated in 1991. The statute does not appear to have a direct forerunner. It appears to codify the prior common law policy against construing power of attorney documents in a manner which gives an attorney-in-fact the power to make a gift of his principal's property.

"[p]owers of attorney are strictly construed. Authority never is extended beyond that which is directly given or necessary and proper to carry the authority to full effect." *Jay v. Dollarhide*, 3 Cal.App.3d 1001, 1020, 84 Cal.Rptr. 538 (Cal.Ct.App.1970).

Plaintiff contends that the language of the "Durable General Power of Attorney" expressly gave Stubblefield the power to write and make gifts of the thirty-eight $10,000 checks. The court's attention is drawn to paragraph (e) of that document, which provides, in pertinent part, that:

[T]o compound, compromise, adjust, settle and satisfy any obligation, secured or unsecured, owing by or to me and to give or accept any property and/or money whether or not equal to or less in value than the amount owing in payment, or settlement or satisfaction thereof;

We cannot construe this language to give Mr. Stubblefield the power plaintiff asserts. The paragraph is clearly aimed at giving the attorney-in-fact the power to pursue and defend claims against or by Mrs. Swanson, and to allow the attorney-in-fact to compromise and settle such claims when appropriate. The paragraph does not, nor does any other language in the document, give the attorney-in-fact the power to make gratuitous transfers of Mrs. Swanson's property. The language "equal to or less in value" cannot reasonably be read to authorize transfers for *no* consideration whatsoever. Such a reading robs the paragraph of its literal meaning.

Having failed to find the authorization to make the gifts in the express terms of the power of attorney, we cannot imply such a power. While the document gave Mr. Stubblefield significant powers to manage and convey Mrs. Swanson's real and personal property, it could not give him the power to make gifts without expressly doing so. *See*

*Shields,* 200 Cal.App.2d at 101, 19 Cal.Rptr. 129 (*quoted supra*). The court cannot imply authority that the document itself does not express. *See Blum v. Robertson,* 24 Cal. 127, 141 (1864).

Plaintiff claims that, even if Mr. Stubblefield did not originally have the authority to make the gifts, Mrs. Swanson's nodding at the names of the donees constituted a ratification [5] of the gifts, thus making them valid. We disagree. "Ratification of an agent's act 'can be made only in the manner that would have been necessary to confer an original authority for the act ratified.' " *Huston,* 51 Cal.App.4th at 1727, 60 Cal.Rptr.2d 217 (*quoting* Cal.Civ.Code § 2310). In this case, the authority bestowed to Mr. Stubblefield under the power of attorney could only be altered or expanded by another writing.

There are good reasons not to imply a power to make gifts of the principal's property. Such authorization runs contrary to the basic agent-principal relationship that a power of attorney represents. As one commentator has noted:

[I]mplying a gift-giving power in a power of attorney destroys any vestige of a fiduciary relationship between the principal and agent.

[W]hen a power of attorney is executed, a fiduciary relationship between the principal and the attorney-in-fact is created. There are many obligations which arise under such a relationship, not the least of which is the agent's duty to act exclusively in the interest of the principal and forego any personal advantage aside from compensation in the exercise of his or her task.

. . . .

[S]upporting this notion that implied gift-giving power destroys fiduciary relations is the fact that making gifts of the principal's

---

**5.** The court notes that a 'ratification' is usually meant to refer to the acquiescence of or some act by the principal which has the legal effect of binding the principal, to the otherwise unauthorized act by the agent, *after* the act by the agent. In this case, the actions by Mrs. Swanson that plaintiff seeks to have declared a ratification occurred before the delivery of the gifts, and are thus not, technically speaking, a 'ratification.' However, this does not effect the result. Regard-

less of whether Mrs. Swanson's nodding is termed a ratification or a prior approval of the gifts, she and Mr. Stubblefield put his powers into writing, and those powers did not include the authority to make gifts of her property. Neither Mrs. Swanson nor Mr. Stubblefield could subsequently alter those powers except by writing. *See Huston,* 51 Cal.App.4th at 1727, 60 Cal.Rptr.2d 217.

estate is never acting exclusively in the interests of the principal. Although many tax advantages can be gained by making such gifts, those advantages are not in the best interests of the principal, but rather in the best interests of his or her heirs! No estate taxes are paid while the principal is alive, and as a result, it seems tenuous to presume that an agent's giving away of the principal's property ought to be presumed valid.

Hans A. Lapping, Note, *License to Steal: Implied Gift–Giving Authority and Powers of Attorney,* 4 Elder L.J. 143, 169 (1996). *See also Casey v. Commissioner,* 948 F.2d 895, 902 (4th Cir.1991) (characterizing gift-giving power in power of attorney as "dangerous"). This policy is clearly reflected in California law.

 Having established that the power of attorney did not authorize the giving of the gifts by Mr. Stubblefield, California law dictates that they were void. *Huston,* 51 Cal. App.4th at 1727, 60 Cal.Rptr.2d 217; *Bertelsen v. Bertelson,* 49 Cal.App.2d 479, 122 P.2d 130, 133 (1942). *See also Randall v. Duff,* 79 Cal. 115, 19 P. 532, 534 (1888) ("The conveyance being one the agent had no power to make, was a nullity.") As the *Shields* court held, "a conveyance without the scope of the power conferred [by the power of attorney] is void." 200 Cal.App.2d at 101, 19 Cal.Rptr. 129 (citations omitted). Mrs. Swanson thus could have recalled these gifts prior to her death, and her estate could have pursued their return.

Section 2038(a)(2) controls the result with regard to these void gifts. Mrs. Swanson retained, albeit inadvertently and almost certainly without her knowledge, a right to revoke the gifts. The plain language of section 2038(a)(2) nevertheless dictates that all thirty-eight $10,000 checks be included in her gross estate for federal estate tax purposes. *See Casey v. Commissioner,* 948 F.2d 895 (4th Cir.1991) (holding gifts made pursuant to a power of attorney unauthorized under Virginia law and thus includible in gross estate for tax purposes).

## CONCLUSION

Having established that the thirty-eight $10,000 gifts were made by Mr. Stubblefield beyond the scope of authority conferred upon him by the power of attorney, we find those gifts to have been void. As such, they were properly includible in Mrs. Swanson's gross estate by virtue of section 2038(a)(2). Accordingly, defendant is entitled to summary judgment. The clerk is directed to dismiss the complaint. Costs to defendant.