IN RE ESTATE OF IRMA A. JAKOPOVIC, DECEASED.
STEVE JAKOPOVIC, APPELLEE, V. JAMES RALPH BROWN,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
IRMA A. JAKOPOVIC, DECEASED, APPELLANT.

622 N.W. 2d 651

Filed February 16, 2001.   No. S-99-1329.

Patrick B. Hays for appellant.

Glenn Van Velson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This is an appeal from the estate proceeding of Irma A. Jakopovic (Irma), deceased. Steve Jakopovic (Jakopovic), her surviving spouse, filed a request for a homestead allowance, an exempt property allowance, and a family allowance, as well as a petition for an elective share of Irma's estate. Irma's son, James Ralph Brown, was appointed as personal representative. He objected to Jakopovic's request for the statutory allowances and petition for an elective share on the ground that Jakopovic had waived any interest in Irma's estate by signing an antenuptial agreement.

The primary issue presented by this appeal is whether Irma's government series E bonds valued at $46,780.24, which were issued to her before her marriage to Jakopovic but were not listed in their antenuptial agreement, were part of her augmented estate for the purpose of calculating Jakopovic's elective share. We conclude that the bonds were not subject to the antenuptial agreement and properly included in the augmented estate. We affirm.

## ASSIGNMENTS OF ERROR

The personal representative assigns that the county court erred in including the value of Irma's government series E bonds in calculating Jakopovic's elective share and in awarding the full

family allowance and full exempt property allowance to Jakopovic.

## BACKGROUND

Irma and Jakopovic were married on September 20, 1980. On September 11, 1980, they entered into an antenuptial agreement. The agreement stated that should either predecease the other, "the survivor shall in no way obtain an interest by inheritance or intestate succession or by way of augmented estate in the *certain property described hereinafter*." (Emphasis supplied.) The property described as being the exclusive personal property of Irma included a parcel of real estate, specified certificates of deposit, and an itemized six-page list of Irma's jewelry, furniture, and other sundry possessions.

Irma died testate on August 9, 1998. Her last will and testament was filed for probate, and Brown was appointed personal representative. Article II of Irma's will stated, "Not being unmindful of my Husband, STEVE JAKOPOVIC, I expressly direct that he not share in my estate under the provisions of this Will as he and I have agreed to this arrangement prior to our marriage."

The personal representative submitted an inventory, which included 12 government series E bonds valued at $46,780.24 that were issued to Irma before she married Jakopovic but not listed in the antenuptial agreement. Jakopovic filed a petition for an elective share of Irma's estate. In his calculation, he used the full value of Irma's estate as set out in the inventory.

Jakopovic acknowledged the antenuptial agreement, but he alleged that he had not waived his rights to a homestead allowance, an exempt property allowance, or a family allowance. In a separate petition, he requested the full amounts permitted under Neb. Rev. Stat. §§ 30-2322 through 30-2325 (Reissue 1995) for each of these allowances. According to Jakopovic's worksheet, 50 percent of the augmented estate would have given him an elective share of $23,238.01. Based upon the worksheet calculation, each of Irma's three sons should contribute $7,746.

The personal representative objected to the petition for an elective share and request for allowances on the sole ground that Jakopovic had waived any interest in Irma's estate as shown by

the antenuptial agreement and Irma's last will and testament. Jakopovic then petitioned the court for relief to compel Brown to pay him the homestead, exempt property, and family allowances.

At the hearing on the request for relief and petition for elective share, Jakopovic stated that the basic terms of the antenuptial agreement were "what was hers' [sic] before we got married, would remain so. And what was mine before we got married, would remain mine. No infringement." He also stated that the pension checks he received from his railroad retirement were the only source of income used for both his and Irma's living expenses and medical expenses during their marriage. During the first 9 years of their marriage, Irma and Jakopovic resided in Jakopovic's house. After that, they lived in Irma's home. There was also evidence that funds from Jakopovic's retirement were paid into Irma's burial fund and used to pay the taxes on their joint tax returns when necessary and on an inheritance that Irma had received.

Jakopovic stated that although Irma told him after they were married that she had "put away" about $35,000, he did not have access to that asset. He also stated that he was unaware of Irma's government series E bonds, that she had not disclosed this asset to him before the marriage, and that the bonds were not included in the antenuptial agreement or any discussions of the agreement.

The county court found that Jakopovic was entitled to the homestead and family allowances and exempt property only if the amount of Irma's estate exceeded the value of the items which were included in the antenuptial agreement. Section 30-2322 provides for a homestead allowance of $7,500. Section 30-2323 entitles the surviving spouse to exempt property not to exceed $5,000, and §§ 30-2324 and 30-2325 allow for a reasonable family allowance not to exceed $9,000. Because the value of Irma's estate was $132,064.32 and the items listed in the antenuptial agreement were valued at $58,000, the court granted Jakopovic the full amount of the three statutory allowances amounting to $21,500. The court made no findings on Jakopovic's available resources or needs.

The court also found that the administrative expenses must be included in the calculation of the augmented estate and, there-

fore, adjusted Jakopovic's elective-share calculation to reflect this deduction. The final elective share was determined to be $20,273.07. Based on these findings, the court ordered the estate to pay Jakopovic $41,773.07 within 30 days. The personal representative appeals.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999); *In re Estate of West*, 252 Neb. 166, 560 N.W.2d 810 (1997).

When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 613 N.W.2d 810 (2000).

## ANALYSIS

The personal representative cites *In re Estate of Carman*, 213 Neb. 98, 327 N.W.2d 611 (1982), for the proposition that a challenge to statutory elections is an equity action reviewed by appellate courts de novo on the record. That standard of review, however, was based on a statute that no longer exists. See *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996). The correct standard of review of probate cases is for error appearing on the record made in the county court. See, *In re Estate of Myers, supra*; *In re Estate of West, supra*.

### ANTENUPTIAL AGREEMENT

The personal representative contends that Jakopovic was not entitled to an elective share in Irma's government series E bonds, which were valued at $46,780.24 at the time of her death. Although the government series E bonds were not listed in the antenuptial agreement, the personal representative argues that the bonds existed before the marriage and that Jakopovic and Irma intended that all separate property before the marriage remain separate property.

Antenuptial agreements that waive the right of election are statutorily authorized by Neb. Rev. Stat. § 30-2316 (Reissue 1995), which provides in part: "The right of election of a sur-

viving spouse and the rights of the surviving spouse to home-stead allowance, exempt property, and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the surviving spouse." See, also, *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986) (concluding that this section allows parties to antenuptial agreement to waive right to elect share of both real and personal property of deceased spouse).

■ We have also held that as a contract, an antenuptial agreement is governed by the same principles that are applicable to other contracts, but is subject to the particular statutory requirement that an antenuptial agreement must be based on fair disclosure. *In re Estate of Stephenson*, 243 Neb. 890, 503 N.W.2d 540 (1993).

The antenuptial agreement entered into by Jakopovic and Irma stated that should either predecease the other, "the survivor shall in no way obtain an interest by inheritance or intestate succession or by way of augmented estate in the *certain property described hereinafter.*" (Emphasis supplied.) The agreement then lists six pages of exclusive personal property belonging to Irma, including everything from her home to a "Kleenex dispenser."

The personal representative cites *Anderl v. Willsey*, 193 Neb. 698, 229 N.W.2d 46 (1975), for the proposition that the intent of the parties to an antenuptial agreement must be determined by considering the conditions and circumstances surrounding the parties at the time the agreement was made. He argues that Jakopovic's statement at the hearing demonstrates that Jakopovic and Irma intended at the time of their agreement for the government series E bonds to remain Irma's separate property.

In *Anderl v. Willsey*, 193 Neb. at 699, 229 N.W.2d at 47, the antenuptial agreement stated that " 'all properties of any kind or nature, real, personal or mixed, wherever the same may be found, which belong to each party, shall be and forever remain the estate of said party . . . .' " The decedent had not changed the name of his beneficiary on two insurance policies when his first wife died, and the issue was whether these policies were among the assets included in the antenuptial agreement with his second wife. This court held that proceeds of the insurance policies were subject to the antenuptial agreement.

■ In *Anderl*, the court was deciding whether the parties intended an unlisted asset to be included in an antenuptial agreement with unspecified property provisions. Although the court considered extrinsic evidence, the antenuptial agreement in that case indicated that the parties had waived *all* rights to the other's property. In such a case, § 30-2316(d) provides:

> [A] waiver of "all rights", or equivalent language, in the property or estate of a present or prospective spouse . . . is a waiver of all rights to elective share, homestead allowance, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits that would otherwise pass to him or her from the other by intestate succession or by virtue of any will executed before the waiver or property settlement.

In contrast, Jakopovic and Irma were very specific about what property they intended to remain separate property. *Anderl* is not controlling.

■ When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000).

In this case, there is no reason to go outside the terms of the agreement itself. Jakopovic and Irma were free to create a contract in which they waived all rights to each other's property had that been their intent. The antenuptial agreement demonstrates that Jakopovic and Irma intended to waive their rights only to the property which was listed in the agreement itself, and the government series E bonds were not listed in the agreement.

Although Jakopovic testified that he and Irma intended their separate property to remain separate, he also testified that he was unaware that Irma had put away $35,000 and that she never informed him of the bonds. Given the extensive accounting of Irma's property in the antenuptial agreement, it is unlikely that an asset of such importance would have been omitted unintentionally. The specificity of the agreement itself is the best indi-

cation of Irma's intent. The fact that Irma had possession of these bonds before her marriage to Jakopovic leads to the conclusion that she would have included the bonds in the antenuptial agreement had that been her intention.

We hold that the county court's finding that Jakopovic had waived his rights only as to those assets listed in the antenuptial agreement conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 613 N.W.2d 810 (2000). Thus, the county court correctly found that the government series E bonds were not included in the antenuptial agreement and properly included them in the calculation of Jakopovic's elective share.

### FAMILY ALLOWANCE AND EXEMPT PROPERTY PROVISIONS

The personal representative also contends that the county court erred in granting Jakopovic the full family allowance under § 30-2325 and the full exempt property allowance under § 30-2323. The record reflects that the personal representative objected to the allowances because Jakopovic had waived the allowances under the antenuptial agreement.

As discussed, the county court correctly concluded that Jakopovic had not waived his rights to any property except those assets listed in the antenuptial agreement. Because the estate was sufficiently solvent to cover the statutory allowances after deducting the value of Irma's assets which were included in the antenuptial agreement, the court granted Jakopovic the full exempt property and family allowances permitted under § 30-2323 and § 30-2324, respectively. The county court made no findings regarding Jakopovic's available resources or needs. The personal representative, however, did not object to the allowances as unreasonable. As noted, the personal representative's only objection to Jakopovic's petitions for an elective share and statutory allowances was made on the ground that he had waived his rights in the antenuptial agreement.

An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000); *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000). Because the reasonable-

ness of the claimed statutory allowances was not challenged by the personal representative and therefore not specifically adjudicated by the county court, we do not consider this issue on appeal.

## CONCLUSION

We affirm the county court's finding that Jakopovic had waived his rights only as to Irma's assets included in the antenuptial agreement, and therefore, the court's inclusion of Irma's government series E bonds in the calculation of Jakopovic's elective share was correct.

AFFIRMED.