IN RE CONSERVATORSHIP OF ROBERT P. ANDERSON,
A PROTECTED PERSON.
TRICIA LU ANDERSON AND LEE ANDERSON, APPELLEES, V.
BARBARA J. LASEN AND PAUL S. LASEN, APPELLANTS.
628 N.W. 2d 233

Filed June 22, 2001. No. S-00-1158.

Paul E. Hofmeister, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellants.

John A. Selzer, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Barbara J. Lasen and Paul S. Lasen appeal from the county court's appointment of Platte Valley National Bank as conservator for the estate of Robert P. Anderson, a protected person. Barbara and Paul complain that a conservatorship was not necessary because they were acting as Robert's attorneys in fact, but that if it was necessary, then they had priority for appointment under Neb. Rev. Stat. § 30-2639(b) (Cum. Supp. 2000). We affirm the appointment of Platte Valley National Bank as conservator because under § 30-2639(c), it was in Robert's best interests to have a disinterested third party appointed as his conservator.

## ASSIGNMENTS OF ERROR

Barbara and Paul assign, restated and condensed, that the county court erred in (1) finding that a conservatorship was

necessary when Robert had already executed a durable power of attorney, (2) finding that it was in the best interests of Robert to appoint Platte Valley National Bank as conservator despite Barbara and Paul's statutory priority under § 30-2639, and (3) dismissing their cross-petition objecting to the appointment of Platte Valley National Bank as conservator and requesting the appointment of Barbara and Paul as coconservators.

## BACKGROUND

The appellees, Tricia Lu Anderson and Lee Anderson, are the children of Robert's deceased son, Sam Anderson. Barbara is Robert's only living child, and Paul is her husband.

The evidence at the conservatorship hearing showed that Robert has been a resident at a health care facility since November 1998. He was 84 at that time and somewhat mentally confused upon his arrival. A medical assistant for the facility testified that he did not remember that his wife and Sam had died and that he thought that his reflection in a mirror was another person. She further stated that his condition has deteriorated over time.

Sam served as Robert's attorney in fact after Robert's wife died in 1995 until Sam's own death in 1998. In 1995, Robert, with Sam's participation, made $10,000 gifts as stock transfers from his estate to Barbara, Sam, Barbara's two children, and Tricia and Lee. Tricia and Lee testified that they were unsure of the amount of the gifts. Paul stated that in 1997, gifts were repeated, and that in 1998, a $10,000 gift was made to Sam. Paul stated that these transfers were agreed to by Robert and were part of a gifting program designed to reduce federal estate tax upon Robert's death.

On April 27, 1998, following Sam's death, Robert appointed Barbara and Paul as his attorneys in fact. Although the durable power of attorney granted Barbara and Paul broad authority to manage Robert's business affairs and property, it did not specifically give Barbara and Paul the authority to make gifts to themselves or to others. Barbara and Paul also took Robert to an attorney to have a new will prepared, which was executed on July 2, 1998. This will leaves all but $60,000 of Robert's estate to Barbara, and in the event she does not survive Robert, then the property is left to Paul. Tricia, Lee, and Barbara's two adult children were given $10,000 each.

Paul testified that although he and Barbara had power of attorney in April 1998, they only helped Robert sort through his mail and pay his bills until November of that year. At that time, Robert agreed to go to the health care facility. Up until this time, Paul stated that Robert was able to take care of himself and handle his personal matters. Barbara also testified that Robert handled his own financial affairs before November. After November, Paul stated that he and Barbara took over the management of Robert's property and affairs.

But Tricia and Lee testified that after Robert's wife died in 1995, his mental condition noticeably deteriorated and that he was much more forgetful. Lee also stated that his father, Sam, had taken Robert to see a neurologist several times beginning in 1995 because Robert was showing symptoms of Alzheimer's disease.

In 1999, Barbara and Paul made $10,000 gifts from Robert's estate to Barbara, Paul, their two children, and one of their children's spouse and son. In 2000, Barbara and Paul made four $10,000 gifts to themselves and their two children. No gifts were made to Tricia and Lee in either year. Contrary to Paul's testimony, the record also reflects that Barbara and Paul made four $10,000 gifts to themselves and their two children in 1998 after Sam died.

Paul stated that Robert's residence was used by Barbara and Paul on their frequent visits to Nebraska. He stated that he and Barbara did not intend to lease Robert's residence or vacation home and that the minor expenses for the houses were paid for out of Robert's funds. He also stated that Barbara would charge the aircraft fuel needed for their trips to Robert's charge account and pay for the bills out of Robert's checking account.

On February 25, 2000, Tricia and Lee filed a petition for the appointment of Platte Valley National Bank as conservator for Robert's estate. Barbara cross-petitioned that a conservator was not necessary because she and Paul had been given a durable power of attorney to manage Robert's property affairs. Alternatively, Barbara requested that she and Paul be appointed conservators if the court found that such an appointment was in the best interests of Robert. In the cross-petition, she alleged the value of Robert's personal and real property was approximately

$668,000. However, in their answers to interrogatories, Barbara and Paul valued Robert's property at approximately $1.1 million.

The county court found that there was clear and convincing evidence that the appointment of a conservator for Robert's estate was necessary because he suffered from mental and physical disabilities which left him unable to manage his property and personal affairs and because he had property which would be wasted or dissipated unless proper management was provided. The court also found it was in Robert's best interests to pass over persons having priority for appointment and to appoint Platte Valley National Bank as conservator of the estate.

## STANDARD OF REVIEW

■■■ An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Jakopovic*, 261 Neb. 248, 622 N.W.2d 651 (2001). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

### POWER OF ATTORNEY

The county court found that there was clear and convincing evidence of a sufficient basis for the appointment of a conservator. The parties have stipulated that Robert is unable to manage his property and affairs effectively. Barbara and Paul, however, argue that a conservator is not necessary because they are managing Robert's assets as his attorneys in fact under a durable power of attorney. Tricia and Lee contend that a conservator was necessary because Barbara and Paul were improperly managing his property and making unauthorized gifts.

■■ Under Neb. Rev. Stat. § 30-2630 (Reissue 1995), a court may appoint a conservator:

(2) . . . in relation to the estate and property affairs of a person if the court is satisfied by clear and convincing evidence that (i) the person is unable to manage his or her property and property affairs effectively for reasons such as mental illness, mental deficiency, physical illness or

disability . . . and (ii) the person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person . . . .

■ Barbara and Paul's appointment as Robert's attorneys in fact under a durable power of attorney authorized them to act as his agent even in the event he became disabled or incapacitated. See Neb. Rev. Stat. § 30-2665 (Reissue 1995) (defining durable power of attorney). But their status as Robert's attorneys in fact would not preclude the appointment of a conservator if the court found that they had wasted or dissipated his estate. See Neb. Rev. Stat. § 30-2667(1) (Reissue 1995) (requiring attorney in fact to make accounting to subsequently appointed fiduciary such as conservator).

■ A power of attorney authorizes another to act as one's agent. *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001). Generally, an agent is required to act solely for the benefit of his or her principal in all matters connected with the agency and adhere faithfully to the instructions of the principal. *Id.* An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal. *Id.* An agent is prohibited from profiting from the agency relationship to the detriment of the principal. *Id.*

Barbara and Paul admit to making gifts to themselves and their family members from Robert's estate for a total of $100,000 during 1999 and 2000. They argue, however, that the gifts were the continuation of a gifting program Robert had agreed to while Sam was his attorney in fact, designed to reduce the size of his estate for tax purposes.

■ This court has repeatedly held that "no gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument itself and there is shown a clear intent on the part of the principal to make such a gift." See, e.g., *Cheloha v. Cheloha*, 255 Neb. 32, 37, 582 N.W.2d 291, 297 (1998). See, also, *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989). We adopted this rule in order to avoid fraud and abuse by attorneys in fact. See *Cheloha v. Cheloha, supra.*

The power of attorney did not authorize, either generally or specifically, gifting by Barbara or Paul to themselves or others

from Robert's funds. The gifts resulted in personal gain to Barbara and Paul and their family, and diminished the value of Robert's estate. Thus, the transfers made by Barbara and Paul were beyond the scope of the powers granted them by Robert's durable power of attorney and, as such, were unauthorized, unlawful, and dissipated Robert's estate. See *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995).

Nonetheless, Barbara and Paul argue that the gifts do not constitute waste or dissipation of Robert's estate as required under § 30-2630(2)(ii) before a conservator can be appointed. They argue that the gifts were in the best interests of the estate because they reduced the amount of federal estate taxes that would have to be paid upon Robert's death. Further, they argue that because Barbara is the primary beneficiary of Robert's will and Tricia and Lee have only minor interests, the federal estate tax will only affect Barbara's inheritance. We read their argument to be that the gifts cannot constitute waste or dissipation because they benefit Barbara and that she is the only person who stands to significantly benefit under Robert's will—a novel but misguided argument.

That argument is based on Barbara's self-interest in Robert's estate and is intrinsically contrary to the fiduciary relationship created by a durable power of attorney, which obligates an agent to act solely for the benefit of the principal. See *State ex rel. NSBA v. Flores, supra*. Further, the argument is presumptive. Even if Barbara should survive Robert, his will may be contested or found invalid.

Finally, Tricia and Lee correctly point out that gifts made beyond the scope of authority granted in a power of attorney under state law are included in the principal's gross estate for federal estate tax purposes under § 2038 of the Internal Revenue Code. See, I.R.C. § 2038(a)(1) (1994); *Estate of Swanson v. U.S.*, 46 Fed. Cl. 388 (2000). Because the gifts were unauthorized under Nebraska law, the estate would not have benefited from them for federal estate tax purposes in any event.

█ Because Barbara and Paul had diminished Robert's estate to their own advantage without authorization, the county court correctly found by clear and convincing evidence that Robert's assets would be wasted or dissipated unless a conservator were appointed pursuant to § 30-2630(2).

PRIORITY FOR APPOINTMENT

Barbara and Paul also contend that if a conservator was necessary, then the county court should have appointed Barbara and Paul because Barbara is Robert's daughter, the primary beneficiary of his will, and one of his attorneys in fact. Tricia and Lee argue that the county court correctly found that it was in the best interests of Robert to pass over Barbara and Paul. They contend that the bank is in a better position to manage Robert's property. They also contend that Robert is entitled to a full accounting from Barbara and Paul and a recovery of all property and funds which have been improperly gifted or otherwise taken by them.

Section 30-2639(b) provides in relevant part:

(b) Persons who are not disqualified under subsection (a) of this section and who exhibit the ability to exercise the powers to be assigned by the court have priority for appointment as conservator in the following order:

(1) A person nominated most recently by one of the following methods:

. . . .

(ii) A person acting under a power of attorney or durable power of attorney; or

. . . .

(5) An adult child of the protected person.

Because Barbara is Robert's only living adult child and because Barbara and Paul were Robert's attorneys in fact, they had priority for appointment as Robert's conservator under the statute. Platte Valley National Bank had no priority for appointment under § 30-2639(b). But subsection (c) of § 30-2639 allows a court, "acting in the best interest of the protected person, [to] pass over a person having priority and appoint a person having lower priority or no priority."

Section 30-2639 instructs a court that the best interests of the protected person are the paramount consideration in making an appointment for a conservatorship, the purpose of which is to protect an estate for the owner's benefit, not the potential heirs or devisees. See, e.g., *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987); *In re Estate of Wagner*, 220 Neb. 32, 367 N.W.2d 736 (1985).

Other jurisdictions have concluded that the appointment of a disinterested third party is in a ward's best interests when the applicant with priority has interests adverse to those of the protected person. See, e.g., *Schmidt v. Hebeisen*, 347 N.W.2d 62 (Minn. App. 1984) (affirming trial court's appointment of trust officer as guardian of adult person and her estate when court had reasonable basis to believe that applicant, who had informally managed estate for several years, had misappropriated large sums of money from estate and shared it among her siblings). See, also, *Couch v. Couch*, 824 S.W.2d 65 (Mo. App. 1991); *Wilhelm v. Wilhelm*, 441 Pa. Super. 230, 657 A.2d 34 (1995).

■ The evidence in this case indicates that Barbara and Paul may be accountable to the conservator of Robert's estate for all of the property transferred to them or members of their family. See § 30-2667(1) (attorney in fact is accountable to subsequently appointed fiduciary). Thus, the county court had a reasonable basis for believing that Barbara's self-interest in her potential liability as an attorney in fact would conflict with a fiduciary's duty of absolute fidelity to Robert's welfare and the interests of his estate. See Neb. Rev. Stat. § 30-2653(24) (Reissue 1995) (giving conservators power to "prosecute . . . actions, claims or proceedings in any jurisdiction for the protection of estate assets"). Moreover, the court had little reason to believe that Barbara and Paul would protect the estate's assets as conservators when they had already made unauthorized transfers to themselves under their durable power of attorney.

When reviewing an order for errors appearing on the record, the appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Estate of Jakopovic*, 261 Neb. 248, 622 N.W.2d 651 (2001). Under these facts, the county court properly found it was in Robert's best interests to pass over Barbara and Paul despite their statutory priority. Accordingly, the county court did not err in dismissing the cross-petition filed by Barbara and Paul.

## CONCLUSION
The county court properly determined that there was clear and convincing evidence that Robert was in need of a conservator

because he was unable to manage his property and personal affairs due to his mental and physical disabilities and because he had property which would be wasted or dissipated unless proper management was provided. The court also properly determined that it was in Robert's best interests to pass over Barbara and Paul's priority for appointment and to appoint Platte Valley National Bank as conservator of Robert's estate.

AFFIRMED.