2007 WY 115

Hubert NICKLE, Appellant (Defendant),

v.

BOARD OF COUNTY COMMISSIONERS OF PLATTE COUNTY, State of Wyoming, Appellee (Plaintiff).

No. 06–128.

Supreme Court of Wyoming.

July 24, 2007.

Representing Appellant: Frank J. Jones, Wheatland, Wyoming.

Representing Appellee: Eric Alden, Wheatland, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

Appellant, Hubert Nickle (hereafter, "Nickle"), challenges the district court's order that had the effect of applying a portion of a supersedeas bond that Nickle posted in an earlier appeal, which arose out of the same circumstances as the instant appeal, so as to recompense the Appellee, Platte County Board of County Commissioners ("the County"), for damages it suffered as a result of that appeal (which was dismissed for want of prosecution). We will affirm.

## ISSUE

Nickle states the issue he wants the Court to address as follows:

Does [the County] have the right to recover the costs expended for abatement of a nuisance?

The County poses an entirely different question:

Is [the County] entitled to recover against the supersedeas bond in [Case No.] 05–252 for its damages incurred by the delay caused by filing of that appeal?

## FACTS AND PROCEEDINGS

At the outset we will take note that, as the record on appeal in this case, we have only a portion of a very short district court record. It consists of 49 pages from the clerk's record, and that includes counting certificates of service and designations of the record by the parties. Transcripts of the several hearings held in this case are not included.

A complaint was first filed on February 19, 2004, although it is not included in the record on appeal. On March 12, 2004, Nickle answered that complaint *pro se*, stating: "I don't believe I am in violation of statutes referred to in this complaint. My zoning is proper for this purpose. These regs. were adopted after I was zoned & established this use.... P.S. You weren't able to even spell my name right."

[¶ 5] On March 31, 2004, the County filed an amended complaint. The County prefaced its complaint with the statement that it is the governing body of Platte County and in that capacity had adopted a zoning resolution regulating the use of lands within Platte County. The zoning resolution itself is not in the record. Continuing, the County alleged:

2. [Nickle is] the owner of part of the **SE1/4NW1/4, Section 20, Township 24 North, Range 67 West of the 6th P.M.,** in Platte County Wyoming.

3. [Nickle is] currently using [his] property for the storage of derelict vehicles and miscellaneous junk.

4. [Nickle has] not obtained a special permit as required under the Platte County Zoning Rules and Regulations for the maintenance or operation of a junkyard on the lands in question.

5. [Nickle's] use of the lands in question is in violation of the Platte County Zoning Resolution. Pursuant to W.S. § 18–5–204 each day's continuation of the violation is a separate offense.

6. Pursuant to W.S. 18–5–206 each day's violation is subject to a fine of not more than seven hundred fifty dollars ($750.00).

7. Pursuant to W.S. § 18–5–205 the zoning resolution is enforceable by injunction and abatement.

NOW THEREFORE the plaintiffs pray that the Court enjoin [Nickle] from continued use of [his] lands in violation of the Platte County Zoning Resolution and order the abatement of the violating use at the expense of [Nickle] and further that the Court fine [Nickle] an appropriate amount for [his] continuing violation of the zoning resolution.

The district court's order, entered on October 8, 2004, recites that a trial was had on September 28, 2004. There is no transcript of that trial in the record. The district court's findings, made after that trial, were:

1. The property in question is zoned industrial and does not have a special permit for use as a commercial junkyard.

2. Platte County's zoning regulations require that a special permit be obtained for industrial property to be used as a junkyard.

3. The current use of the property by Nickle is as a junkyard as that term is defined in the Platte County Zoning Regulations.

4. The Defendant Nickle raises three defenses which the Court addresses as follows:

a. The Defendant's ex-wife, Maria Nickle, was not served with the Complaint. The Court finds that Maria Nickle, although named as a defendant in the case, has no interest in the property, that interest having been set over to Defendant, Hubert Nickle, in a divorce approximately ten years ago.

b. The use of the property as a junkyard is grandfathered. The Court finds that the Defendant's use of the property did not begin until after the adoption of the Platte County Zoning Regulations and so is not grandfathered.

c. The Defendant's use of the property as a junkyard results in an estoppel in this action. The Defendant has not established the elements necessary to support a finding of estoppel.

NOW THEREFORE the Court finds generally for the Plaintiff, Board of County Commissioners for Platte County, State of Wyoming, in this matter and enters the following orders of injunction and abatement.

### ORDER OF INJUNCTION

The Defendant Hubert Nickle is hereby enjoined from using the SE1/4NW1/4, Section 20, Township 24 North, Range 67 West of the 6th P.M., in Platte County Wyoming, as a junkyard as that term is defined in the Platte County Zoning Regulations until such time as he secures a special use permit authorizing the use of the property for that purpose. The Defendant is enjoined from receiving onto the property additional scrap metal, derelict vehicles, or other similar materials until such time as a special use permit is obtained.

### ORDER OF ABATEMENT

The Defendant Hubert Nickle is ordered to abate his illegal use of the property within sixty (60) days of September 28, 2004, by removing from that property all scrap metal, abandoned mobile homes, unlicensed vehicles and other salvage materials.

[¶ 7] Nickle's efforts to subvert and delay said order were called to the district court's attention. On December 8, 2004, the district court issued an order to show cause. A hearing was held on December 20, 2004, but a transcript of it is not included in the record on appeal. On January 6, 2005, after that hearing, the district court supplemented its original order as follows:

1. The Defendant has not made good faith efforts to comply with the Court's Order of Abatement filed herein on October 8, 2004.

2. The Defendant may comply with the October 8, 2004, Order between this date and January 23, 2005.

3. It is necessary to issue an Order authorizing the County to remove the illegal materials as listed in the Order filed October 8, 2004, and impose a lien against the property to acquire payment of such removal.

NOW THEREFORE IT IS ORDERED that effective January 24, 2005, the County may remove all scrap metal, abandoned mobile homes, unlicensed vehicles and other salvage materials from the lands of the Defendant. The County shall have a lien against the materials removed or the proceeds of their sale and the Defendant's lands located in the **SE1/4NW1/4, Section 20, Township 24 North, Range 67 West of the 6th P.M.**, in Platte County, Wyoming, known as 26 Sawmill Rd., Wheatland, Wyoming, to assure repayment of the costs of removal.

[¶ 8] Nickle wrote to the district court on January 23, 2005, indicating that he had done a significant amount of work toward satisfying the district court's order, but that he needed an extension of time in order to fully be in compliance.

The record does not reflect what the County's or the district court's responses were, but the next document in the record is a letter to the County, from Nickle, dated September 30, 2005. In that letter he stated that he had removed 1.5 million pounds of material from his property. He conceded there were a few things left to be removed, but most of the remaining materials were things that were not "other salvage material." Continuing, Nickle related this to the County:

We do not own the scrap cars that are visible east of our property. If one were to see those cars that Walt Hall has on his property, one might assume they were mine, and they are not. There is similar items on others adjoining properties.

Eric Alden, the County Attorney, admitted that he doesn't know anything about the "scrap business." Marlin Johnson stated in his December 3, 2003 letter: "In addition, a junkyard is allowed in the Industrial Zoning District only with an approved Special Permit. Although the junkyard use established prior to 1976 is grand fathered without any Special Permit, any expansion of the junkyard use since 1976 requires [an] approved Special Permit prior to obtaining a Zoning Certificate." I really haven't expanded my recycling project for the past almost 40 years. And it is zoned for 40 acres of area anyway.

Under the **amnesty** rules I applied for a Permit for Trucking, Truck and Trailer Rebuilding and *Scrap Recycling* on 5/20/04. I paid the permit Special Permit fee on 9/27/04 # 2449. The county took the money and never has sent me a rejection of my permit.

Actually, all along I've also been in the "Scrap Recycling" business, and even in this year's "clean up" nothing has fit the description of "junk" and been hauled to the Landfill. All items have been part of Saleable or Sold Recycling products.

I am most interested to make an agreement "in definition" of what exactly needs to be additionally removed. But the words "all junk" is not adequate. This might be Scrap Recycling Steel or Iron, or maybe my sawmill or lumber inventory. If one would drive past my property one would easily be able to see stacked lumber inventory. You would also see a Sawmill and sawmill equipment.

Remember the saying: **"One man's junk is another man's treasure."** And the treasure part of it is my business. I do clean up and sell other peoples junk. Otherwise yard sales and garage sales would be outlawed and people would have to be licensed to sell their "junk." And maybe a special use permit should be given to them, to have their junk on their front lawn for sale, in a residential district. If it were all junk, no one would buy anything from a yard sale.

So, I think I have complied with the Court Order. I still think there is more beautification to be done and am working at it. I also request that no one comes on to my property to steal anything of value to me.

Now, remember, I will be most happy to discuss what exactly additionally needs to be removed to keep you or your experts happy. [Emphases in original.]

[¶ 10] On October 3, 2005, the County filed in the district court a petition to hold Nickle in contempt of the district court's order, on the basis that he was ordered to complete the removal of materials from his property by January 24, 2005, and he had failed to do so. In addition, it was asserted that on October 3, 2005, Nickle refused to allow County personnel onto his property as required by the order "and has refused to allow the county's contractor to remove materials from the property pursuant to the Court's Order."

[¶ 11] On October 5, 2005, the district court held a hearing on that motion, and at this point Nickle was represented by counsel. The transcript of that hearing is not in the record on appeal either. On October 6, 2005, after the hearing, the district court issued another order that specified that the materials which had not been removed, but which were required to be removed under the district court's order of October 5, 2004, were to be removed. Nickle was also directed not to interfere with the County's efforts to do its removal work. Finally, that order stated:

"Questions relating to the extent of the County's lien for reimbursement of clean-up expenses and delay costs occasioned by [Nickle's] refusal to allow contracted personnel to enter the property will be considered at a later hearing."

[¶ 12] On October 7, 2005, Nickle filed a notice of appeal in the district court, seeking review of the district court's October 6, 2005 order. That case was docketed in this Court on October 26, 2005, as Case No. 05-252. On October 14, 2005, the district court set a supersedeas bond in the amount of $20,000.00, in connection with that appeal. W.R.A.P. 4.02.[1] On December 14, 2005, this Court dismissed Nickle's appeal in Case No. 05-252, because Nickle failed to timely file a brief in that case.

[¶ 13] On January 24, 2006, the County filed a motion for an additional clean up order, and on that same date, petitioned the district court to forfeit Nickle's supersedeas bond. In the petition to forfeit the supersedeas bond in the amount of $17,000.00, the County alleged:

1. Pursuant to the Order of this Court and upon [Nickle's] failure to abate the nuisance on his property as ordered, the [County] contracted with private parties for the clean-up of [Nickle's] property.

2. After repeated efforts to block the [County's] contract agents both physically and through legal proceedings, [Nickle] was ordered to allow the County to clean up his property.

3. [Nickle] filed an appeal of the Court's Order to the Wyoming Supreme Court and pos[t]ed a supersedeas bond in connection with that appeal.

4. The County has paid its contracting agent the sum of Seventeen Thousand Dollars ($17,000.00).

5. [Nickle's] appeal has been dismissed by the Wyoming Supreme Court for failure [to] file timely briefs.

6. [Nickle] has failed to clean up the property.

[¶ 14] In its March 13, 2006 memorandum supporting the petition to forfeit the supersedeas bond, the County alleged that its expenses of $17,000.00 arose out of the delays occasioned by Nickle's appeal. The record indicates that several other papers were filed in the meantime and that a hearing on those matters was held, but these things, likewise, are not included in the record on appeal.

[¶ 15] The district court issued a decision letter on April 12, 2006, articulating the reasons why $17,000.00 of the supersedeas bond should be paid to the County. The remaining $3,000.00 was returned to Nickle. An order effectuating that decision was entered on April 19, 2006.

---

1. **Rule 4.02. Supersedeas bonds.**

(a) Whenever an appellant so entitled desires a stay on appeal, appellant may present to the trial court a supersedeas bond in such amount as shall be fixed by the trial court and with surety or sureties to be approved by the court or by the clerk of court. The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is not perfected or is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award.

(b) When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining and unsatisfied, costs on appeal, and interest, unless the court, after notice and hearing and for good cause shown, fixes a different amount or orders security other than the bond. When the judgment determines the disposition of the property in controversy, as in real actions, replevin, and actions to foreclose mortgages, or when such property is in the custody of the sheriff, or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at the sum as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay. When appellant has already filed a surety bond in the trial court, a separate supersedeas bond need not be given, except for the difference in amount as determined by the trial court to be attributable to the appeal.

(c) When the judgment directs the execution, assignment or delivery of a conveyance or other instrument, appellant may execute, assign or deliver the conveyance or other instrument, leaving same in the custody of the clerk of the trial court in which the judgment was rendered, there to remain and abide the judgment of the appellate court, and in such case appellant shall give bond only for costs on appeal and damages for delay.

## DISCUSSSION

[¶ 16] To the extent this case involves the district court's construction of W.R.A.P. 4.02 that is a question of law that we review *de novo*. *E.g., Bixler v. Oro Management, L.L.C.*, 2006 WY 140, ¶ 5, 145 P.3d 1260, 1262 (Wyo.2006). However, in its totality the question presented here is a mixed question of law and fact. Whether the rule in question contemplates an award for the sorts of damages at issue here is a question of law, but the district court must also take evidence on which to base any award of damages that may be allowed by the rule. The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *E.g., Forshee v. Delaney*, 2005 WY 103, ¶ 6, 118 P.3d 445, 448 (Wyo.2005).

[¶ 17] It is the appellant's burden to bring us a complete record on which to base a decision. When no transcript has been made of trial proceedings, this Court accepts the trial court's findings as being the only basis for deciding the issues which pertain to the evidence. In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings. *E.g., Chancler v. Meredith*, 2004 WY 27, ¶ 5, 86 P.3d 841, 842 (Wyo.2004).

[¶ 18] The record here is woefully incomplete. From the material forwarded to this Court as "the record on appeal," we can only conclude that the district court did not err as a matter of law to the extent that it applied W.R.A.P. 4.02. So far as facts are concerned, applying the rule recited above, we presume that a complete record would sustain the district court's fact findings.

[¶ 19] Finally, we note that Nickle purports to appeal from two orders issued in 2005, as well as the order entered on April 19, 2006, for which Nickle filed a timely notice of appeal. Of course, he did appeal one of the earlier orders, but that appeal was dismissed. We need not dispositively discuss whether the earlier orders were subsumed into the April 19, 2006 order, because whether they were or not, we do not have a complete enough record to perform any sort of meaningful appellate review in this case. It would be a disservice to the jurisprudence of this Court to attempt to fashion any sort of precedent from such a chaotic record.

## CONCLUSION

[¶ 20] The order(s) of the district court are affirmed.