2008 WY 41

**Donald Joseph EVERITTS, Appellant (Defendant),**

**v.**

**Carey Hunter ININNS, f/k/a Carey Hunter Everitts, Appellee (Plaintiff).**       .

No. S–07–0153.

Supreme Court of Wyoming.

April 9, 2008.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Appellant, Donald Joseph Everitts (Husband), seeks review of an order of the

district court which denied his motion for an order to show cause why Appellee, Carey Hunter Ininns (fka Everitts) (Wife), should not be held in contempt for failure to obey the district court's custody and visitation provisions, as they were set out in the parties' stipulated Settlement Agreement which was adopted into the divorce decree. In addition, Husband contends that the district court's order operated in such a manner as to modify visitation, without there having been a petition to modify custody/visitation presented to the district court for consideration. We will affirm the district court's "Order on Defendant's [Husband's] Petition to Show Cause."

### ISSUES

[¶ 2]   Husband raises these issues:

1. Whether a court may modify a divorce decree without a party filing a petition for modification and a finding of material change of circumstances.

2. Whether in the course of interpreting this Decree of Divorce and Settlement Agreement, the district court impermissibly considered evidence beyond the four corners of the document.

Wife responds with this query:

Did the district court abuse its discretion in entering the Order on Defendant's Petition to Show Cause?

### FACTS AND PROCEEDINGS

[¶ 3]   A Decree of Divorce was entered in the district court on August 13, 2004, in which the parties' marriage was dissolved. The terms of the divorce were agreed to by the parties and memorialized in a Settlement Agreement that was filed in the district court on July 28, 2004. The parties are the parents of a son [Child] who was born in 1995. The only controversy that has arisen concerns the matter of visitation. The Settlement Agreement was detailed in addressing this issue, in significant part because of Husband's unusual working schedule. His work took him out of the country for about a month at a time, after which he would be home for about a month. We set out the details below:

4. *CHILD CUSTODY AND VISITATION.* The parties have carefully considered the matter of the custody of Child, and in doing so, they have been guided by considerations touching upon his welfare. The parties are convinced that the interests of [Child] will best be served through an arrangement which provides for joint legal custody. The Wife shall be the primary physical custodian of [Child]. The parties shall share time with [Child] in accordance with the following schedule:

(a) The Husband is currently employed on a work schedule out of the country four weeks on and four weeks off. Attached to this agreement as Exhibit C is a calendar from July through December, 2004 designating the nights when [Child] shall stay with the Husband and nights when [Child] shall stay with Wife. The parties shall follow this schedule through December 31, 2004, and thereafter on a similar basis. The schedule differs depending on whether it is during the school year or during the summer recess. The usual school holidays shall be shared as follows:

i. *Christmas Vacation:* To the extent possible based on the Husband's schedule, the parties will share one-half of each Christmas holiday. The Wife shall have the first half of the Christmas holiday in 2004, and the second half of the holiday in 2005. The Husband shall have the second half of the Christmas holiday in 2004 and the first half in 2005. The parties shall thereafter alternate their time with [Child] on this basis.

ii. *Spring Break:* The Husband shall have the first half of Spring Break in 2005 and the second half in 2006. The Wife shall have the second half of Spring Break in 2005 and the first half in 2006.

iii. *Thanksgiving:* The Husband shall have [Child] for Thanksgiving vacation in 2004 and even years thereafter as indicated on the schedule attached hereto. The Wife shall have [Child] for Thanksgiving vacation in 2005 and odd years thereafter.

(b) Should the Husband's schedule not permit him to see [Child] during the precise period agreed upon for a particular holiday, the parties agree to work together

in good faith toward sharing the time for that particular holiday in a manner that works for each of them.

(c) The Husband will typically arrive home from his work overseas on Thursday evening. During the school year he will pick up [Child] after school on Friday. During the summer he will pick up [Child] at approximately 9:00 a.m. on Friday.

(d) During the summer recess the Husband may have [Child] for two separate periods of two continuous weeks to be arranged by the parties before the end of the school year.

(e) The Husband shall provide the Wife at least seven (7) days notice of his return date from work, and more notice if possible. Notification shall be via e-mail.

(f) Should the Husband's employment overseas terminate, or change substantially, a new timesharing arrangement will be negotiated.

(g) Each parent will have the right to visit with [Child] for a dinner out during his/her off week, unless [Child] is out of town, camping, traveling, or the like.

(h) The parties shall exert every reasonable effort to maintain reasonable access and unhampered contact between each of them and the Child, and they shall confer with each other on all important matters pertaining to the health, welfare, education, and upbringing of the Child, with a view at arriving at a harmonious policy calculated to promote the best interest of the Child. Each party promises that neither shall do anything that shall estrange the Child from the other, or hamper the natural development of [Child's] love for each of the parties, nor shall either make statements in the presence of the Child that are designed to embarrass, malign, or negate the other party, nor shall they allow others to do so in the presence of the Child. Each party shall promptly notify the other in case of a serious illness concerning the Child. "Serious illness" shall mean any illness that confines the Child to bed for more than two days, or when the Child is placed in the hospital for any reason by a physician, or other circumstance other than the ordinary illnesses of life such as common colds, coughs, and flu. Selection of medical treatment, surgical, hospital, dental, institutional, or psychiatric care shall be agreed upon mutually by the parties, except in case of emergency, and in such emergency situation, whoever shall have physical custody of the Child shall decide upon medical treatment, and then immediately attempt to notify the other parent.

i. The parties acknowledge and agree that in sharing the Child's time as set forth in the above schedule, they have a duty to exercise the same so as to benefit the Child to the greatest extent possible, and so as not to interfere with [Child's] attendance at school or schoolwork or extracurricular activities, except to the least extent possible.

ii. Each party agrees to keep the other advised of his or her current address, telephone number, and place of employment.

(i) Both parents shall exercise the following rights in the best interest of their Child;

i. Right to inspect and receive the Child's medical and dental records, and the right to consult with any treating physician or dentist of the Child;

ii. Right to consult with school officials concerning the Child's welfare and educational status, and the right to inspect and receive student records;

iii. Right to receive or have forwarded promptly from the appropriate parent or school, copies of all school reports, calendar of school events, notices of parent-teacher conferences and school programs;

iv. Right to be informed of any extracurricular activities the other parent has arranged for the Child;

(j) Both parents agree to abide by the following guidelines:

i. Provide the Child with an emotional environment in which they are free to continue to love the other parent and to spend time with [Child].

ii. Encourage good feelings from the Child about the other parent and their [sic] extended family;

iii. Communicate with the other parent openly, honestly, and regularly to avoid misunderstandings that are, or could be, harmful to the Child;

iv. Plan together as parents rather than through the Child;

v. Plan and consult with the other parent in advance for time with the Child.

vi. The parties believe that it may be appropriate from time to time to remove the Child from school a day or so prior to or following extended school vacations, in order to allow a parent to add an extra several days to his or her out-of-town vacation time with the Child, and each parent agrees to be flexible and cooperate with the other in this regard;

vii. Do not, in front of the Child, take sides or take issue with decisions or actions made by the other parent;

viii. Present a united front in handling any problems with the Child;

ix. Take a consistent and predictable role in the Child's life, using time with the Child to strengthen relationships with the Child;

x. Be flexible in arranging dates and times with the Child so these plans do not interfere with important family events or prior planned activities of the other parent or the Child, keeping in mind that staying on schedule in all ways possible is very important to the Child and that changing the Child's schedule is very difficult on the Child.

(k) If either party desires to move from Teton County he *or* she shall give the other party at least 90 days written notice, and the parties shall negotiate a new time sharing agreement regarding [Child]. [Underlining in original.]

[¶ 4] Exhibit C to the Settlement Agreement was made up of calendar pages for the months of July through December of 2004. From that exhibit it could be ascertained that:

1. For the month of July 2004, Child was to be with Husband on July 23, 24, 25, and 31. Notes on that calendar page indicated [1. Except as otherwise indicated each exchange shall consist of delivering [Child] to school or to the other parent by 9:00 a.m., which ever is applicable. 2. [Child] shall be with Wife on all days not otherwise specifically designated.].

2. For the month of August 2004, Child was to be with Husband from August 1 through August 14, and was to be delivered to Wife at 5:00 p.m. on August 15.

3. For the month of September 2004, Child was to be with Husband on September 17, 18, 19, 23, 24, 26 and 30. That page also indicated that Child was to be delivered to Wife at 9:00 a.m. on September 25, and to Husband at 9:00 a.m. on September 26.

4. For the month of October Child was to be with Husband on October 1, 2, 3, 7, 8 and 9. Child was to be delivered to Wife at 5:00 p.m. on October 10.

5. For the month of November 2004, Child was to be with Husband on November 12, 13, 14, 18, 19, 20, 24, 25, 26, 27 and 28. Child was to be delivered to Wife at 9:00 a.m. on November 21.

6. For the month of December 2004, Child was to be with Husband on December 2, 3, and 4. Husband was to deliver Child to Wife at 5:00 p.m. on December 5, 2004. That calendar page also noted that Husband was to return on January 6, 2005.

[¶ 5] With respect to establishing a visitation schedule, Wyo. Stat. Ann. § 20–2–201(d) (LexisNexis 2007) provides that:

> The court shall order custody in well defined terms to promote understanding and compliance by the parties. Custody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody.

Wyo. Stat. Ann. § 20–2–202(a)(i) goes on to suggest that the district court should: "Order visitation in enough detail to promote understanding and compliance."

[¶ 6] On August 3, 2006, Husband filed a Petition for Order to Show Cause pursuant to Wyo. Stat. Ann. § 20–2–204 (LexisNexis 2007), which provides:

§ 20–2–204. **Enforcement and modification.**

(a) Either parent may petition to enforce or modify any court order regarding custody and visitation.

(b) **A court having jurisdiction under W.S. 20–2–203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children.** In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances. [Emphasis added.]

[¶ 7] Husband claimed that Wife:

3. [Wife] has in complete derogation of the parties' Settlement Agreement, paragraph 4, has done the following:

(a) Failed to provide her mailing address;

(b) Blocked [Husband] from receiving any of his e-mails (see her attached e-mail of February 18th, 2005);

(c) Plans visitation by using [Child] as the conduit to communicate.

4. [Wife] has in complete derogation of the parties' Settlement Agreement willfully and intentionally: "Failed to exert every reasonable effort to maintain reasonable access and unhampered contact between each of them and [Child]," as follows:

(a) When phone messages are left on [Wife's] answering machine from out of the country, no return e-mail is made by Ms. Ininns or [Child].

(b) [Wife] will not permit [Husband] to pick up [Child] from Ski Race team practice at Snow King.

(c) [Wife] will not permit the parties' minor [Child] to go to [Husband's] house after school to play with [Child's] friends while she is driving the Wilson school bus.

(d) [Wife] recently forcefully restrained the parties' minor Child from going to a baseball game with [Husband], alleging that because she paid the one Hundred Fifty ($150.00) sign-up fee only she was permitted to take him to the game, and

(e) Has otherwise interfered or made it impossible to set up a regular phone schedule with [Child] in order that [Child] be available on specific days and times of each week when the [Husband] calls from overseas where he is working.

5. [Wife] has breached the parties' Settlement Agreement by failing to negotiate "a new timesharing agreement" for [Child] despite the fact that [Husband's] overseas employment terminated on April 28th, 2006. (see her attached e-mail of May 31st, 2006).

6. Despite the fact that [Husband], due to his work, has missed every other Christmas vacation as well as Spring Break since Christmas of 2004, [Wife] has failed and refused and continues willfully to refuse to abide by paragraph 4(b) of the Settlement Agreement, which requires her to work together with [Husband] in good faith toward sharing the time for that holiday. [Wife's] position has adamantly been either use it or lose it, in derogation of paragraph 3 of the Divorce Decree, which states in part that "[Husband] be awarded liberal visitation" with the parties' minor child.

7. Pursuant to the parties' Settlement Agreement paragraph 12(b), which in part states that:

"In the event that either party breaches this Agreement or is in default with respect to the same, he or she shall pay to the other party the attorney's fees

and other reasonable costs incurred by the non-defaulting party as a result of the breach or default" and W.S. 20–2–204, [Husband] requests that the Court order [Wife] to pay all Court costs and [Husband's] attorney's fees for breaching the Settlement Agreement.

8. [Wife], although admitting to third parties that [Child] would rather be with his father (Petitioner) when his father is back to Jackson from work, has willfully and intentionally sought to deny [Husband] access to their son in order to punish [Husband]. See the attached affidavit of Ned Brown, which by reference is made a part hereof.

[¶ 8] The affidavit of Ned Brown was not attached to the Petition, but a few e-mails are attached, and to the extent they have any evidentiary value, they suggest that the idealism expressed in the Settlement Agreement has not worked very well in real life. For instance:

[¶ 9] On or about February 18, 2005, this e-mail exchange took place. Wife e-mailed Husband:

"I think that you have obviously been miss guided. I am the custodial parent during the school year. Last checked school was still in session. Your schedule has is no different then before. You leave you come back. I will no longer be accepting mail from you. You will have to have your lawyer contact Lea about any schedule change. While were at it maybe we should revisit child support since your making so much more money and you have the guest apt. rented. [sic]" Husband responded: "Custodial parenting being contested. Apartment not rented. Not making anymore money. Stuff your greed. [sic]."

[¶ 10] On or about May 31, 2006, Husband sent this e-mail to Wife:

I will be returning to work end of july. In the meantime, I propose that I go to California, without [Child], leaving June 6 returning June 15th. You take [Child] July 1st and I pick him up July 8th. I then will bring [Child] back on the 24th of July and you have him the rest of the summer.

This equates to the designated time for the total summer. [sic]

Wife responded:

AND JUST WHAT DO YOU PROPOSE FOR THE REST OF THE YEAR. I NEED A SCHEDULE THAT'S SET IN STONE, NO GREY AREA'S. ONE THAT DOES NOT EVOLVE AROUND YOUR LIFE'S SCHEDULE, BUT [CHILD'S] LIFE. YOU MIGHT CHECK OUT THE SCHEDULE THAT YOU AGREED TO WHEN OUR DIVORCE WAS FINALIZED. [SIC]

Husband then countered:

Get a calendar and write your 28/28 on it. I'm not settling for anything less. You seem to forget you had [Child] the whole month of july and part of august. You also seem to forget that I have [Child] every other Sunday when you are home. I see this is going no where. While you are forgetting things, don't forget that you had [Child] last christmas. [sic]

[¶ 11] On August 9, 2006, Wife responded to Husband's petition, denying the bulk of his allegations. Wife asked the district court to order mediation. On August 11, 2006, the district court entered an order requiring the parties to mediate their disputes.

[¶ 12] On January 26, 2007, Wife filed a motion to dismiss Husband's petition, essentially contending that things remained about the same as they had been at the time of the divorce, and that the schedule agreed to by the parties at the time of the divorce should remain in force. Husband filed a motion opposing Wife's motion, essentially contending that his employment had changed and that Wife refused to meaningfully try to accommodate his overseas work schedule. The district court set those opposing positions for hearing on March 28, 2007.

[¶ 13] The hearing was held as scheduled, but it was not reported so we do not know what transpired at the hearing. The district court issued this order after the hearing:

1. There are no grounds to hold [Wife] in contempt of Court. The [Husband's] Petition to Show Cause is hereby dismissed.

2. The parties are to continue following the schedule outlined in the Settlement Agreement dated July 28, 2004, including the [Wife] having the child on the 2nd Sunday of each rotation commencing at 9:00 a.m. and the 4th Sunday of each rotation commencing at 5:00 p.m. Unless otherwise agreed by the parties, the regular schedule shall not be changed to make-up for time missed, including holidays.

3. The parties are encouraged to continue mediating with regard to the schedule.

## DISCUSSION

[¶ 14] It was Husband's burden to bring us a complete record upon which to base a decision. *Nickle v. Board of County Commissioners of Platte County*, 2007 WY 115, ¶ 17, 162 P.3d 1208, 1213 (Wyo.2007). A hearing was held on the matters at issue in this case, and the above-cited rule requires us to assume that the transcript of that hearing would support the district court's resolution of this case. We have held " . . . that an order originating in a contempt proceeding, which does not even purport to find a party in contempt is interlocutory only and therefore not appealable." *Stone v. Stone*, 842 P.2d 545, 547–49 (Wyo.1992); also see generally *FML v. TW*, 2007 WY 73, ¶¶ 5–10, 157 P.3d 455, 458–59 (Wyo.2007). However, here the district court's order goes beyond just denying Husband's request that Wife be found in contempt. Although it appears on the face of things that the district court merely iterated provisions of the original decree, absent a transcript we cannot be certain of that. For these reasons we affirm the district court's order because the absence of the transcript of the hearing will permit no other result.

## CONCLUSION

[¶ 15] The district court's order is affirmed.