2008 WY 80

Barbara J. LASEN and Paul S. Lasen, wife and husband, Appellants (Plaintiffs),

v.

Samuel L. ANDERSON, Deceased; Tricia L. Rohloff; and Lee C. Anderson, Appellees (Defendants),

and

First National Bank, Trustee of the Anderson Family Irrevocable Trust No. 1 Dated August 14, 1997, Appellee (Intervenor).

No. S–07–0138.

Supreme Court of Wyoming.

July 14, 2008.

Representing Appellants: Jerry M. Smith of Torrington, Wyoming.

Representing Appellees: Howard P. Olsen Jr. of Simmons Olsen Law Firm, PC, Scottsbluff, Nebraska.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellants Barbara J. Lasen and Paul S. Lasen (Lasens) challenge the district court's order denying their complaint to quiet title to a Goshen County farm owned by Barbara's late father.

[¶ 2] We affirm.

## ISSUES

[¶ 3] The Lasens state their issues as follows:

1. A general issue for review is: "Are the findings of the District Court clearly erroneous as a matter of law and unsupported by the evidence?"

2. Did the District Court err in determining that the Plaintiffs exercised undue influence to gain execution of the 1998 Deed to the Goshen County property?

3. Did the District Court err in determining the 1995 Deed was properly delivered?

4. Did the District Court err by not considering whether Defendants had unclean hands?

## FACTS

[¶ 4] Robert Anderson was the father of Barbara (Anderson) Lasen and Samuel L. Anderson. Samuel predeceased his father, dying in April of 1998. Robert passed away in February of 2003 after living most of his adult life in Scottsbluff, Nebraska.

[¶ 5] Prior to both men passing, Robert executed a deed in 1995 conveying a farm in Goshen County, Wyoming, to his children, Barbara and Samuel.[1] This deed was executed in the law office of a Nebraska attorney, who also notarized Robert's signature. Escrow instructions were also included by way of letter to Paul Lasen, requesting Paul Lasen to hold the deed until Robert's death, after which the deed should be delivered to Robert's children.[2]

[¶ 6] After Samuel died, Robert executed another deed on July 2, 1998, conveying the same Goshen County farm to Barbara and her husband Paul (the Lasens). Disputing the validity of the new deed, in May of 1999 Samuel's children Tricia Rohloff and Lee Anderson filed a *Notice of Execution and*

---

1. At the same time Robert executed the Goshen County farm deed, he also executed another deed conveying property in Arizona to Barbara and Samuel.

2. The district court found that although Mr. Lasen was aware of the 1995 deed and escrow instructions, he did not hold the documents in escrow. As a result, Samuel held them for safe-keeping. After Samuel's death, Tricia Rohloff found the documents and delivered them to an attorney in Fort Collins, Colorado, who was handling Samuel's estate. Unfortunately, these documents have been "misplaced and/or lost" by another attorney and have never been found, although copies of the documents were introduced as evidence in the trial on the instant case.

*Delivery of Warranty Deed* with the Goshen County Clerk asserting an interest in the farm based on the first deed executed in 1995. After Robert died, the 1998 deed was recorded on March 3, 2003, by the Lasens. And although the Lasens' complaint to quiet title asserted their rights to the Goshen County farm based upon the 1998 deed, Samuel's children argued that the 1995 deed was executed, delivered, accepted, and irrevocable—giving no effect to the 1998 deed. Samuel's children further asserted that their grandfather Robert was not competent to execute the 1998 deed, and that the 1998 deed was procured through undue influence on Robert by the Lasens.

[¶ 7] The relationship between Robert and the Lasens was complicated at best. When he died in 2003, Robert was in his late 80's, and there was evidence that Robert's already deteriorating mental condition had accelerated.[3] In fact, even as early as March 5, 1998, Robert's physician noted some progressive memory problems, and there is some indication that Robert had at least been prescribed Aricept, a medication commonly given to patients with Alzheimer's disease.

[¶ 8] As mentioned above, Samuel died unexpectedly in 1998. Family members converged on Fort Collins, Colorado, for the funeral on April 25, 1998. Those family members included the Lasens, who were multi-tasking, grieving the loss of Samuel and making arrangements to have Robert change his will.[4] In fact, the very day before Samuel's funeral, the Lasens took Robert to an attorney in Scottsbluff, Nebraska, and scheduled an appointment for two days after the funeral. As a result of that meeting, the Nebraska attorney prepared a power-of-attorney for Robert appointing the Lasens as his attorneys-in-fact. Robert was to execute the new will the next day (April 28, 1998—the same day the Lasens returned to their home in Memphis). The Nebraska attorney discovered a conflict, and referred the Lasens and Robert to Roy Hahn, another local

attorney in Scottsbluff. Within days, the Lasens flew back from Memphis and accompanied Robert to Hahn's office. As a result of that meeting, Hahn prepared a new will that gave Samuel's two children $10,000.00 each. The new will also provided a gift to the Henry, Nebraska Methodist church. The balance of Robert's estate, which totaled over $1,000,000.00, went to Barbara Lasen, with a provision that if Barbara predeceased Robert, then Robert's estate would go to Paul Lasen.

[¶ 9] On July 1, 1998, Barbara Lasen took Robert to visit his physician, where she expressed concerns about his deteriorating mental condition. However, the very next day, Barbara took Robert back to attorney Hahn, and the April will was revised to reflect that Barbara's children would also receive gifts of $10,000.00 each. The revised will maintained that the residuary estate would go to Barbara, and in the event of her early demise, then to Paul Lasen. That same day, Robert also executed two deeds conveying the Goshen County farm and an Arizona property solely to the Lasens. These new deeds were prepared by Paul Lasen, who stated at trial that he prepared the new documents at the request of Robert. At issue in this case is the validity of the 1995 and 1998 deeds conveying the Goshen County farm.

[¶ 10] As noted by the district court in its decision letter, there are several other matters of importance worth noting. After Samuel died in 1998, his children were suspicious that the Lasens were illegally taking Robert's money, and they filed a petition for the appointment of the Platte Valley National Bank as conservator for Robert's estate. The Lasens contested the petition alleging that a conservator was unnecessary because they already had power-of-attorney to manage Robert's affairs or, in the alternative, the Lasens requested that *they* be appointed conservators. After a trial, the bank was appointed conservator. The Lasens appealed

---

3. At trial, there was apparently evidence to the effect that Robert would lock himself out of his home repeatedly, give already-negotiated checks to his church as a donation, and drive his power mower without engaging the blade.

4. Prior to Samuel's death, he and Barbara were to share equally in Robert's estate, and if they did not survive, their heirs were to inherit their respective shares.

the decision of the Nebraska court, which was affirmed by the Nebraska Supreme Court in *In re: Conservatorship of Anderson*, 262 Neb. 51, 628 N.W.2d 233, 240 (2001).

[¶ 11]   In spite of the appointment of the bank as conservator, the Lasens continued to spend Robert's money for their own use. Specifically, they used $20,000.00 to purchase a Lexus automobile, and $75,000.00 to purchase an airplane.   In addition, the Lasens recorded the deed conveying the Arizona property from Robert to themselves and immediately sold the property for $65,000.   The Platte Valley National Bank as conservator filed suit against the Lasens seeking recovery of over $300,000.

[¶ 12]   Also of note, following Robert's death, there was a will contest between the Lasens on one side and Samuel's children, Lee Anderson and Tricia Rohloff, on the other.   Robert's will, executed on August 29, 1997, had been admitted into probate in Nebraska.   The other two wills executed in 1998 were found by a jury in Scottsbluff County, Nebraska, to be invalid because of undue influence exerted by the Lasens on Robert.[5]

[¶ 13]   On July 11, 2005, the Lasens filed the complaint at issue in the instant case, asking the district court to quiet title in the Goshen County farm owned by Robert before he passed away.   Named as defendants in the complaint, Tricia Rohloff and Lee Anderson responded and alleged numerous affirmative defenses.   On March 21, 2006, First National Bank of Fort Collins, Colorado, as Trustee of the Anderson Family Irrevocable Trust No. 1 dated August 14, 1997, intervened as an additional defendant, claiming an interest in the Goshen County farm on behalf of the estate of Samuel Anderson. After a bench trial, the district court entered an *Order Denying Plaintiffs' Complaint to Quiet Title and Granting Intervenor's Counterclaim to Quiet Title.*

[¶ 14]   This appeal seeks to overturn the district court's decision.

## STANDARD OF REVIEW

[¶ 15]   When a matter has been tried before the district court without a jury, the Supreme Court's review of the district court's findings of fact is conducted under the clearly erroneous standard, but conclusions of law are reviewed *de novo.   Kimble v. Ellis*, 2004 WY 161, ¶ 7, 101 P.3d 950, 953 (Wyo.2004).   A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.   *Nickle v. Board of County Com'rs of Platte County*, 2007 WY 115, ¶ 16, 162 P.3d 1208, 1213 (Wyo. 2007).

## DISCUSSION

[¶ 16]   The Lasens argue generally that the district court's findings are not supported by the evidence presented at trial. More specifically, the Lasens contend that the lower court erred first in finding that the Lasens exerted undue influence over Robert Anderson, in determining that the 1995 deed was delivered and, finally, in not considering the issue of "unclean hands" at trial.   Unfortunately for the Lasens, no transcripts were designated in the record on appeal.   It is an appellant's burden to bring an appellate court a complete record upon which to base a decision.   *Everitts v. Ininns*, 2008 WY 41, ¶ 14, 180 P.3d 919, 925 (Wyo.2008).   This rule requires this Court to assume that the transcript of a hearing would support the district court's resolution of the case.   We proceed accordingly.

### *Undue Influence*

[¶ 17]   First, we consider the Lasens' undue influence claim.   The Lasens insist that a careful review of the record will reflect no undue influence exerted by them over Robert Anderson.   In direct contrast, the Appellees maintain that the district court was correct when it concluded not only that undue influence was present, but was applied in an "embarrassingly and shamelessly perfidious" manner.

---

**5.**   This matter is being appealed by the Lasens to the Nebraska Supreme Court.

[¶ 18] Coming to the conclusion that it did, the district court considered that in order to prevail on a claim of undue influence, the following must be proven: 1) opportunity to control; 2) a condition permitting subversion; and 3) activity on the part of the person charged. See *Estate of Short v. Hall*, 785 P.2d 1167, 1170 (Wyo.1990). To support its conclusions, the district court noted that:

> Even before Samuel Anderson's funeral, the Lasens were making appointments with attorneys to assure that Robert Anderson's will was changed. The substantive changes to that will all but disinherited Samuel Anderson's children, gave most of the estate to Barbara Lasen, and ultimately Paul Lasen if he survived Barbara.

The court also declared it "apparent" that by 1998, Robert's mental health was "seriously compromised," noting that one day Barbara took her father to the doctor to discuss his deteriorating mental status, and the very next day took him to an attorney to execute a new will and a new deed to the Goshen County farm, which deed was prepared by Mr. Lasen.

[¶ 19] The district court's findings do not stop there. The court observes in its decision letter that the Lasens took Robert to a nursing home with orders to not resuscitate him in the event of an emergency. Also, in violation of a court-ordered conservatorship, the Lasens used their power-of-attorney to transfer large sums of money from Robert to themselves, to buy a car and an airplane, and to sell Robert's Arizona townhouse for their own profit. The court also notes a tape-recorded conversation played at trial where Robert "was clearly not tracking well," and that such conversation was "instructive." The court stated: "The conversation is, frankly, disgraceful and represents an obvious attempt to manipulate Robert Anderson."

[¶ 20] In conclusion, the district court stated:

> The Lasens clearly had an opportunity to control Robert Anderson. The activities of the Lasens after Samuel Anderson's death were continually directed towards causing Robert Anderson to change his will, his power-of-attorney, and the deed in question.
>
> The Lasens were with Robert Anderson when all such changes occurred. Specifically, they made appointments with lawyers to aid in that purpose and Mr. Lasen even rewrote the 1998 deed to the Goshen County Farm himself.
>
> . . . The evidence is clear and convincing that the Lasens abused their confidential relationship with Robert Anderson to gain a[SIC] control over his assets.
>
> This Court does conclude by clear and convincing evidence that the Lasens exercised undue influence on Robert Anderson to gain execution of the 1998 deed to the Goshen County property.

[¶ 21] Upon review, the facts in the instant case amount to one of the clearest cases of undue influence we have seen. We see no facts to the contrary, and affirm the district court.

*Delivery of the Deed*

[¶ 22] Next, we address whether or not the district court erred in determining that the 1995 deed was properly delivered. The Lasens argue that the 1995 deed was never actually delivered because it was found in Samuel Anderson's personal papers after he died. Apparently, after Robert executed the deed in 1995, bestowing the Goshen County farm to Barbara and Samuel, Robert directed the deed, along with a letter placing it in escrow, to be held by Paul Lasen until Robert's death. However, for whatever reason, Paul Lasen refused to keep the deed and letter, and it ended up with Samuel Anderson, and eventually, his attorney Mayo Sommermeyer. Unfortunately, somewhere along the way the deed and letter were misplaced by Mr. Sommermeyer.

[¶ 23] The main issue is whether or not there was delivery and acceptance of the 1995 deed so as to effect an irrevocable transfer. To effect a conveyance transferring title, a deed must be both executed and delivered. *Lenhart v. Desmond*, 705 P.2d 338, 342 (Wyo.1985). At the time of the

delivery the grantor's intent is of primary and controlling importance. *Id.*

[¶ 24] The Lasens argue that the deed was never delivered as Robert instructed and that there is a "total lack of evidence of delivery." We must disagree with the Lasens. Undeniably, the deed was accepted by Samuel for filing upon his father's death. And, as the district court points out, the Lasens were "ready and willing to accept any and all of Robert Anderson's assets at any time." We could not agree more. The district court found a "clear, irrevocable transfer" of the Goshen County property by Robert Anderson. We agree, and only reiterate the lower court in saying that the fact that a second deed was written and executed by the Lasens in 1998 does not obviate the first deed that was both executed *and* delivered.

*Unclean Hands*

[¶ 25] Finally, the Lasens argue that Samuel Anderson's children come before this Court with unclean hands, alleging first that Samuel's children refused to give Robert his papers, files, and other property when requested, and second that Samuel embezzled funds from another trust, and from Barbara Lasen, and that the existence of the 1995 deed and escrow letter was concealed throughout the legal proceedings. This argument fails on appeal as it appears to be a "red herring" argument made by the Lasens in a last ditch effort to resurrect this case in their favor. Furthermore, the Lasens have failed to support what argument they make with citation to or analysis of pertinent legal authority. Without fail, we do not consider arguments not supported by citation to relevant legal authority. *Cathcart v. Meyer*, 2004 WY 49, ¶ 20, 88 P.3d 1050, 1060 (Wyo. 2004). We decline to consider the Lasens' final argument and affirm the district court's order denying plaintiffs' complaint to quiet title and granting intervenor's counterclaim to quiet title.

## CONCLUSION

[¶ 26] The district court's *Order Denying Plaintiff's Complaint to Quiet Title and* *Granting Intervenor's Counterclaim to Quiet Title* is affirmed.